## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNDRA HOLMES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-6894** |
| **DARREL VANNOY, WARDEN** | **SECTION: "F"(1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

### State Court Factual and Procedural Background

Petitioner, Undra Holmes, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On March 21, 2006, Holmes was charged by a bill of information with possession of cocaine with the intent to distribute in violation of La. Rev. Stat. § 40:967(A).[1] On May 1, 2008, a jury found petitioner guilty as charged.[2] On July 7, 2008, the trial court denied petitioner's motion for new trial and sentenced him to twenty years at hard labor, the first two years to be served without the benefit of probation, parole, or suspension of sentence.[3] On March 10, 2009, the Fifth Circuit Court

---

[1] State Rec., Vol. 4 of 7, Bill of Information dated June 21, 2006.
[2] State Rec., Vol. 2 of 7, trial transcript of May 1, 2008, p. 137; State Rec., Vol. 1 of 7, minute entry dated May 1, 2009; State Rec., Vol. 1 of 7, jury verdict form.
[3] State Rec., Vol. 1 of 8, minute entry dated July 7, 2008; State Rec., Vol. 5 of 7, sentencing transcript of July 7, 2008.

of Appeal affirmed petitioner's conviction and sentence.[4]  The Louisiana Supreme Court denied writs without stated reasons on January 8, 2010.[5]

In the meantime, on July 7, 2008, the state filed a habitual offender bill of information.  On April 17, 2009, the trial court found that petitioner was a fourth offender and re-sentenced the petitioner to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[6]  On December 11, 2012, the Fifth Circuit Court of Appeal affirmed the trial court's judgment adjudicating petitioner to be a fourth time offender but amended the sentence to reflect that only the first two years of petitioner's life sentence was to be served without the benefit of parole.[7]  The Louisiana Supreme Court denied writs without stated reasons on June 14, 2013.[8]  Petitioner did not seek a petition for writ of certiorari with the United States Supreme Court.

On November 15, 2013, petitioner filed a motion to correct illegal sentence.[9]  The state district court denied the motion on January 14, 2014.[10]

On January 14, 2014, petitioner filed a counseled application for post-conviction relief with the state district court raising claims of insufficient evidence and ineffective assistance of counsel.[11]  On July 14, 2014, the state district court denied petitioner's application as to his ineffective assistance of counsel claims and declined to consider the insufficient evidence claim for procedural reasons.[12]

---

[4] State v. Holmes, 10 So. 3d 274 (La. App. 5th Cir. 2009); State Rec., Vol.7 of 7.
[5] State v. Holmes, 24 So. 3d 857 (La. 2010) (mem.); State Rec., Vol. 2 of 7.
[6] State Rec., Vol. 2 of 7, minute entry dated April 17, 2009; State Rec., Vol. 6 of 7, transcript of April 17, 2009.
[7] State v. Holmes, 106 So. 3d 1076 (La. App. 5th Cir. 2012); State Rec., Vol. 6 of 7.
[8] State v. Holmes, 118 So. 3d 1080 (La. 2013) (mem.); State Rec., Vol. 7 of 7.
[9] State Rec., Vol. 3 of 7, Motion to Correct Illegal Sentence Pursuant to C.CR.P. Art. 882 Requesting a More Lenient Sentence under the Provision of LSA-R.S. 15:308(B) mailed November 12, 2013.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).
[10] State Rec., Vol. 3 of 7, order dated January 14, 2014.
[11] State Rec., Vol. 3 of 7.
[12] State Rec., Vol. 1 of 9, order dated July 14, 2014.

On August 28, 2014, petitioner filed an application for supervisory writs with the Fifth Circuit Court of Appeal.[13]    On November 5, 2014, the Fifth Circuit found that petitioner's insufficient evidence claim was procedurally barred under La. Code Crim. P. arts. 930(B) and (C) and that petitioner failed to prove that the trial court erred in denying his claims of ineffective assistance of counsel.[14]   Petitioner filed an application for writ with the Louisiana Supreme Court on November 28, 2014.[15]   On October 2, 2015, the Louisiana Supreme Court denied relief without stated reasons.[16]

On May 17, 2016, petitioner filed the instant federal application seeking habeas corpus relief in which he asserts the following claims for relief: (1) he was wrongfully found to be a fourth felony offender; (2) the trial court erred in denying his motion to suppress; (3) ineffective assistance of counsel; and (4) the evidence was insufficient to convict him of possession with the intent to distribute.[17]

The state filed a response conceding that the application is timely and that petitioner exhausted his remedies in the state courts except to the extent that petitioner claims that any of the alleged predicate convictions were obtained in violation of his constitutional rights.    The state, however, claims that petitioner's insufficient evidence claim is procedurally barred and that petitioner's remaining claims have no merit.[18]

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.   Amended subsections

---

[13] State Rec., Vol. 3 of 7, Application for Writ, 13-K-682, signed August 28, 2014.

[14] State Rec., Vol. 7 of 7, 5th Cir. Opinion, 14-KH-682, dated November 5, 2014.

[15] State Rec., Vol. 7 of 7, Application for Writ, 14 KH 25791418, signed November 28, 2014.

[16] State ex rel. Holmes v. State, 178 So. 3d 988 (La. 2015) (mem.); State Rec., Vol. 7 of 7.

[17] Rec. Doc. 4.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner signed his certificate of service on May 17, 2016.  Rec. Doc. 4-1, p. 30.  While petitioner lists these four claims in his memorandum, he only presents argument as to the first and third claims.

[18] Rec. Doc. 16.

2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1705 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id., at 1706 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White, 134 S. Ct. at 1701.

## **Facts**

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

The hearing on the motion to suppress was held on February 12 and 13, 2007. The first witness called by the state was Terry Wilson, a sergeant in the New Orleans Police Department. Sergeant Wilson testified that on July 11, 2005, he received a tip from a reliable confidential informant. Officer Wilson told the court that he had used the confidential informant to arrest other narcotics dealers since 1989. According to the informant, a man named Undra Holmes would be transporting a large amount of cocaine into Orleans Parish. He provided Sergeant Wilson with a description of a car that would be transporting the cocaine and indicated that the transporter kept a large amount of drugs at his residence. According to the informant, the car was a gold Chrysler Concorde and was located at Moe's Auto Repair on North Galvez Street in New Orleans. Sergeant Wilson considered the information to be credible and proceeded to Moe's Auto Repair. When he arrived, he found a gold-four door Chrysler LHS sedan parked on the street.[1] After conducting approximately one to one and a half

hours of surveillance on the car while it was unoccupied, Sergeant Wilson observed the defendant enter the vehicle and drive away.  Sergeant Wilson stopped the car after the occupant had driven approximately two blocks, though he admitted that the occupant had not committed any traffic offenses.  The defendant identified himself as Undra Holmes, and was ordered to exit the vehicle.  Sergeant Wilson called for a narcotics dog at the scene.  The narcotics dog made an indication in the area of the car's radio, which Sergeant Wilson noted was loose.  Sergeant Wilson pulled out the radio and discovered a rag inside the well that contained approximately thirty-three grams of crack cocaine.  At that time, the defendant was placed under arrest.[2]  The car also contained a bill from the New Orleans Times–Picayune with the defendant's name and an address on nearby Bartholomew Street in New Orleans.[19]  Sergeant Wilson proceeded to this address and the defendant's mother opened the door.  The defendant's mother provided Wilson with an address in Metairie where she claimed the defendant resided with his girlfriend.

[1] The Chrysler LHS and Chrysler Concorde are both full-size four door sedans.

[2] The thirty-three grams of cocaine was placed in the Central Evidence and Property Room in the basement of the New Orleans Police Department, but was lost in the flooding that followed Hurricane Katrina.  The defendant was not charged with an offense resulting from this initial traffic stop.

Lieutenant Robert Gerdes of the Jefferson Parish Sheriff's Office was next to testify.  Lieutenant Gerdes told the court that he had received a call from Sergeant Wilson informing him of the defendant's arrest in Orleans Parish and that his mother had provided the police with his residential address in Metairie.  Gerdes then contacted Detective David Angelica and Detective Brandon Boylin, who made their way to the address the defendant's mother had provided.  Angelica knocked on the door and two women appeared, later identified as Stephanie Thomas and Kiana Chapman.  Both Thomas and Chapman signed a consent form allowing police to search the residence.  Detectives Angelica and Boylin recovered approximately fifty grams of crack cocaine from a pair of men's jeans located in the bedroom the defendant shared with one of the tenants.  They also recovered a digital scale from the bedroom closet, brown paper bags with cut corners, plastic packaging, and paperwork with the defendant's name that coincided with the Metairie address.

The defendant testified on his own behalf. He told the court that his vehicle was parked on North Galvez Street near Moe's Auto Repair on July 11, 2005.  The vehicle was being repaired by Moe's and had been at that location for approximately one month.  Shortly after the defendant left the auto repair shop, he was stopped by several police cars on Conti Street.  He was forced out of the vehicle by police officers, handcuffed, and made to stand on the sidewalk.  The defendant told the court that it took approximately thirty to forty minutes for the canine unit to arrive.  He did not see the canine unit make an indication but was arrested, read his Miranda rights, and placed in the rear seat of a police car shortly after the dog began searching the vehicle.  On cross examination, the defendant admitted that he had moved from Bartholomew St. to Gibson St. about three weeks before the arrest.  When the defendant was asked about

[19] There is no evidence supporting the Fifth Circuit's statement that the Time-Picayune bill was found in the car or that the bill had a Bartholomew Street address.  Rather, as addressed further herein, the witnesses all testified that the Times-Picayune bill was found at the Metairie apartment.  This error in the factual recitation is of no significance, however, as the parties agree that the bill was found at the apartment.

the car from which the narcotics had been recovered, he stated that it was a gold Chrysler LHS, not a gold Chrysler Concorde.

The court denied the defendant's motion to suppress on May 1, 2008. Trial in this matter was held on the same day. The testimony at trial was essentially the same as the testimony elicited at the motion to suppress. The defendant was found guilty as charged by a twelve person jury. On July 7, 2008, the defendant's motion for a new trial was denied and the trial court sentenced him to 20 years imprisonment at hard labor, with the first two years to be served without benefit of parole, probation, or sentence… .[20]

## Petitioner's Claims[21]

## Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to convict him of the offense of possession with the intent to distribute cocaine. The state argues that this claim is procedurally barred. The state is correct.

The United States Fifth Circuit Court of Appeals has explained:

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted). Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned. Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

---

[20] State v. Holmes, 10 So. 3d 274, 276-78 (La. App. 5th Cir. 2009); State Rec., Vol. 7 of 7.
[21] For ease of analysis, this Report and Recommendation addresses petitioner's claims in a different order than they were listed in his federal application.

Here, there is no question that the state courts denied this claim on procedural grounds. The state district court found the claim procedurally barred as it was not raised at trial or on appeal, citing La. Code Crim. P. art. 930.4.[22] The Louisiana Fifth Circuit Court of Appeal refused to consider this claim because it had not been preserved for review, holding:

> First, we find that relator has failed to demonstrate that the trial court erred in its denial of claim one. The trial court properly surmised that relator was procedurally barred from raising this claim in an application for post-conviction relief under La. C.Cr.P. art. 930.4(B) and (C).[23]

The Louisiana Supreme Court denied relief without stated reasons.[24]

It is well-established that La. Code Crim. P. art. 930.4(B) and (C) are independent and adequate state court grounds sufficient to procedurally bar claims from federal habeas review. See, e.g., Ayo v. Cain, Civ. Action No. 13-4580, 2015 WL 8475523, at *6 (E.D. La. Oct. 26, 2015), adopted, 2015 WL 8334524 (E.D. La. Dec. 9, 2015); Brown v. Cain, Civ. Action No. 11–2267, 2011 WL 7042222, at *8 (E.D. La. Dec. 20, 2011), adopted, 2012 WL 123288 (E.D. La. Jan. 17, 2012); Thomas v. Cain, Civ. Action No. 11–2408, 2011 WL 6046536, at *5 (E.D. La. Nov. 17, 2011), adopted, 2011 WL 6028779 (E.D. La. Dec. 5, 2011); Young v. Travis, Civ. Action No. 07–3542, 2011 WL 494811, at *8 (E.D. La. Jan. 13, 2011), adopted, 2011 WL 494802 (E.D. La. Feb. 4, 2011); Jones v. Cain, Civ. Action No. 10–0187, 2010 WL 3312592, at *5-6 (E.D. La. July 29, 2010), adopted, 2010 WL 3312594 (E.D. La. Aug. 19, 2010); Green v. Cooper, Civ. Action No. 06–1657, 2009 WL 87590, at *10 (E.D. La. Jan. 8, 2009).

Where, as here, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage

---

[22] State Rec., Vol. 3 of 7, order dated July 14, 2014.
[23] State Rec., Vol. 7 of 7, 5th Cir. Opinion, 14-KH-682, dated November 5, 2014.
[24] State ex rel. Holmes v. State, 178 So. 3d 988 (La. 2015) (mem.); State Rec., Vol. 7 of 7.

of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). However, "[t]o establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Here, petitioner has not offered any cause for the default which would excuse the procedural bar imposed by the state courts. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

When a petitioner has failed to meet the "cause and prejudice" test, a federal court should normally consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice." That exception is a limited one which exists only if a petitioner makes a colorable showing that he is "actually innocent." See Bagwell v.Dretke, 372 F.3d 748, 757 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998).

In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley, 243 F.3d at 220 (citations omitted). However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995). Here, petitioner presents no new evidence whatsoever, much less any evidence of the type or caliber referenced in Schlup. Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, Holmes's claim that insufficient evidence supported his conviction is procedurally barred and should not be considered by this Court.

## Motion to Suppress

Petitioner contends that the trial court erred in denying his motion to suppress. He, however, does not present any argument regarding this claim.

Defense counsel filed a motion to suppress the evidence.[25] That motion was denied after a hearing.[26] In the first direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected petitioner's claim that the trial court erred in denying the motion to suppress, holding:

> The defendant assigns a single error to the proceedings below, namely, that the trial court erred in denying his motion to suppress the evidence. He makes two distinct arguments in support of the assignment. First, the defendant claims that the tip from the confidential informant did not provide Sergeant Wilson the requisite reasonable suspicion to conduct an investigatory stop under <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Second, he argues that even if Sergeant Wilson had the requisite suspicion to conduct a <u>Terry</u> stop, the evidence should have been suppressed because the defendant's continued detention constituted an illegal seizure.
> *Investigatory Stops*
> As aforementioned, the defendant disputes whether the information provided by the confidential informant was sufficient to generate reasonable suspicion for the investigatory stop conducted by police. The defendant argues that the information was insufficient and, therefore, that the evidence against him should have been suppressed.
> The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, the Louisiana Constitution provides that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." LA. CONST. art. 1, § 5. As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. Warrantless searches and seizures are considered to be per se unreasonable unless they can be justified by one of the Fourth Amendment's warrant exceptions. <u>See, e.g.,</u> <u>State v. Freeman</u>, 97–1115 (La. App. 5 Cir. 12/29/98), 727 So. 2d 630, 634. The state has the burden of showing that one of the exceptions applies. <u>See, e.g.,</u> <u>State v. McHugh</u>, 92–1852 (La.1/6/94), 630 So. 2d 1259, 1262. We review a trial court's ruling on a motion to suppress under the manifest error standard. <u>State v. Williams</u>,

---

[25] State Rec., Vol. 1 of 7, motion to suppress the evidence filed March 28, 2006.

[26] State Rec., Vol. 1of 7, minute entry dated February 12, 2007; State Rec., Vol. 1of 7, minute entry dated February 13, 2007; State Rec., Vol. 1of 7, transcript of February 12, 2007; State Rec., Vol. 1of 7, transcript of February 13, 2007; State Rec., Vol. 1of 7, order dated January 24, 2008.

08–272, p. 3 (La. App. 5 Cir. 12/16/08), 3 So. 3d 526; State v. Higgins, 03–1980, p. 20–21 (La. 4/1/05), 898 So. 2d 1219, 1233, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

Police officers are permitted to conduct warrantless "investigatory stops" upon a person reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The test for "reasonable suspicion" is whether the police officer had sufficient knowledge of the facts and circumstances to justify an infringement upon the individual's right to be free from governmental interference. See, e.g., State v. Melancon, 03–514 (La. App. 5 Cir. 10/28/03), 860 So. 2d 225, 228, writ denied, 03–3505 (La. 4/23/04), 870 So. 2d 297. If the police officer did not have reasonable suspicion to conduct the investigatory stop, the stop is illegal and the evidence seized from it must be suppressed. Id. at 229; Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Tips provided to police by confidential informants can supply sufficient reasonable suspicion to conduct an investigative stop under certain circumstances. The tip must accurately predict the offender's conduct in sufficient detail to support a finding that the informant had reliable information regarding the illegal activity. See, e.g., Id. The tip must also be corroborated by the police. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). If an informer's tip accurately predicts the offender's future behavior it gains an additional modicum of reliability. Id. Predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect. See, e.g., State v. Francois, 04–1147, p. 7 (La. App. 5 Cir. 3/29/05), 900 So. 2d 1005, 1010. An informant's past record for accuracy and reliability is another factor taken into account when determining the reliability of the tip in question. State v. Austin, 04–993 (La. App. 5 Cir. 3/1/05), 900 So. 2d 867, 879, writ denied, 05–0830 (La.11/28/05), 916 So. 2d 143.

The Louisiana Supreme Court has noted:

While probable cause must be determined on the totality of the circumstances, an informant's reliability, veracity and basis of knowledge are "all highly relevant." Illinois v. Gates, 462 U.S. 213[, 103 S.Ct. 2317, 76 L.Ed.2d 527] (1983); State v. Ruffin, 448 So. 2d 1274, 1278 (La. 1984). A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the informant's knowledge and the informant's reliability, when examined under the totality of the circumstances, are established.

State v. Fisher, 97–K–1133, p. 8 (La. 9/9/98), 720 So. 2d 1179, 1184.

With these principles in mind, this Court concludes that the police officers had the requisite reasonable suspicion to conduct an investigative stop. In making this determination, we look to two Louisiana cases and one United States Supreme Court case with factual situations similar to the instant case.

In State v. Anthony, 07–204 (La. App. 5 Cir. 11/27/07), 971 So. 2d 1219, a reliable confidential informant informed police that a man nicknamed "Twin" would be delivering crack cocaine to the Oasis Motel located at 70 Westbank Expressway in

12

Gretna.  The informant stated that Twin would be driving a newer-model, black Pontiac Grand Prix with chrome rims.  <u>Anthony</u>, 971 So. 2d at 1223.  The police set up surveillance at the Oasis Motel using several unmarked vehicles.  Approximately twenty to thirty minutes after the call, police observed a black Grand Prix with three occupants enter the Oasis Motel parking lot.  <u>Id.</u>  Several police officers approached the vehicle with guns drawn, and one saw a passenger throw a white object into the back seat of the Grand Prix.  <u>Id.</u>  All three men were detained and later arrested when cocaine and heroin were discovered in the car.  <u>Id.</u> at 1223–24.  The defendants argued that the trial court erred in denying their motions to suppress because the police did not corroborate the information supplied by the confidential informant before they converged on their vehicle, but this Court disagreed.  We concluded that there was "no error in the trial court's denial of defendants' motions to suppress. The police corroboration of the confidential informant's tip gave them reasonable suspicion to justify the stop."  <u>Id.</u> at 1227.

In <u>State v. Rodriguez</u>, 99–914 (La. App. 5 Cir. 1/25/00), 761 So. 2d 14, police found contraband in a vehicle after an investigatory stop arising out of a reliable confidential informer's tip.  The tipster informed police that a particular apartment was "involved in wholesale distribution and storage of heroin" and that a resident of the department would be arriving with a large shipment of heroin.  <u>Rodriguez</u>, 761 So. 2d at 15–16.  The informant did not mention the resident's name, nor did he indicate what type of vehicle the resident would be driving.  <u>Id.</u> at 16.  After conducting surveillance on the apartment complex, the police observed two men exit the apartment pointed out by the informant and enter a vehicle.  <u>Id.</u>  The two men were not acting suspiciously when they exited the apartment.  Put differently, "[t]he only factor causing [the police] to be suspicious of these individuals was that they left that apartment [indicated by the informant]."  <u>Id.</u>  The police activated their lights and siren and pulled the two men over.  The driver immediately fled the scene and managed to escape.  The defendant, who was riding as a passenger, attempted to flee and throw away a black bag.  However, he was apprehended and placed under arrest after brown powder in the bag tested positive for heroin.  <u>Id.</u> The trial court denied the defendant's motion to suppress the heroin, but this Court reversed, with one judge dissenting.  We noted that:

> [T]he information was so sparse that it was impossible to determine the veracity, basis of knowledge and reliability of the informant and the information given.  Also, the predictive aspect of the information was so vague that it did not rise to the level of reasonable suspicion.

<u>Id.</u> at 19.

In <u>Alabama v. White</u>, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), an anonymous tipster informed police that a woman named "Vanessa White" would be leaving a particular apartment in a brown Plymouth station wagon with a broken taillight, that she would be going to a local motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case.  <u>White</u>, 496 U.S. at 327, 110 S.Ct. 2412.  The officers decided that the tip was credible and proceeded to the spot that the informant had mentioned.  <u>Id.</u>  The <u>White</u> defendant then exited the apartment noted by the informant, entered the brown Plymouth station wagon with a broken taillight, and began to drive off.  She was stopped near the motel and gave officers consent to search her car.  The police offers discovered a brown attaché case in the

defendant's trunk, which contained a large amount of marijuana. A small amount of cocaine was later recovered from the defendant's purse. Id. The defendant's guilty plea was reversed by the Court of Criminal Appeals of Alabama on the basis that the officers did not have the reasonable suspicion necessary under Terry to justify the investigatory stop of respondent's car, but the United States Supreme Court reversed. Writing for the majority, Justice White admitted that "[i]t is true that not every detail mentioned by the tipster was verified, such as the name of the woman leaving the building or the precise apartment from which she left; but the officers did corroborate that a woman left the [defendant's apartment] building and got into the particular vehicle that was described by the caller." He concluded:

> Although it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car.

Id. at 332, 110 S.Ct. 2412.

With these principles in mind, we cannot conclude that the trial court committed manifest error in holding that Sergeant Wilson had reasonable suspicion to stop the defendant's vehicle. We believe, as the United States Supreme Court did in White, that the instant appeal presents a "close case." There are several factors weighing in favor of admissibility. For example, the informant in the instant case had proven reliable over a period of nearly twenty years and had helped police make many cases. The police were able to corroborate the defendant's name, physical description, and vehicle from the informant's confidential tip. In addition, the informant accurately advised the police where the vehicle would be located. On the other hand, the police showed no particularized or objective basis for suspecting that the defendant was engaged in criminal activity. The state presented no evidence to show that the defendant was committing, had committed, or was about to commit an offense. Most importantly, and contrary to the state's assertion otherwise, it is pellucidly clear that the tip provided absolutely no predictive information.

It is also true that the confidential informant's tip did not provide every pertinent detail, as was the case in White. For example, the informant omitted mention where the defendant resided, where in the vehicle the cocaine would be located, and what quantity of cocaine would be found. As the United States Supreme Court noted, a failure to provide every detail is not a fatal error, but it is significant.

Given the circumstances and the police corroboration of the informant's tip, Sergeant Wilson had the requisite reasonable suspicion to stop the defendant's vehicle. Thus, the trial court did not err in denying the defendant's motion to suppress on the basis that the informant's tip did not provide enough reasonable suspicion to conduct an investigatory stop.

*Canine "Sniff" Searches*

A canine "sniff" is not a search and officers do not need reasonable suspicion to conduct a dog "sniff" search. State v. Joseph, 02–717 (La. App. 5 Cir. 6/27/03), 850 So. 2d 1049, 1053; United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Once probable cause for the search of a vehicle exists, a police officer has the authority to search those places in the vehicle in which there is probable cause to believe the object searched for may be found. See, e.g., California v. Acevedo, 500 U.S. 565, 570, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

14

In the instant case, the narcotics dog was called to the scene and made an indication in the area of the Chrysler's radio. Therefore, there was probable cause to search in the proximity of the radio, and the trial court did not commit manifest error in denying the defendant's motion to suppress for lack of probable cause to search the radio well.

*Unlawful Seizure*

The defendant also contends that his continued detention and questioning without an arrest warrant constituted an unconstitutional seizure, and that all evidence seized subsequently should therefore be suppressed. We disagree.

A "seizure" for Fourth Amendment purposes occurs when an individual submits to the assertion of state authority or is physically restrained. See, e.g., California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991); State v. Parnell, 07–37, p. 10 (La. App. 5 Cir. 5/15/07), 960 So. 2d 1091, 1097, writ denied, 07–1417 (La. 1/7/08), 973 So. 2d 733. Not every investigatory stop is considered a seizure under the Fourth Amendment. Parnell, 960 So. 2d at 1098. Rather, a seizure only occurs when the police restrain the liberty of an individual by means of physical force or show of authority. Id. The use of actual restraint does not alone transform a street encounter between the police and a citizen into an arrest, because an investigatory stop necessarily "involves an element of force or duress, temporary restraint of a person's freedom to walk away." Id. (citing State v. Salazar, 389 So. 2d 1295, 1298 (La.1980)).

In United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), the United States Supreme Court recognized that a stop that continues indefinitely will at some point no longer be justified as an investigatory stop and morphs into a Fourth Amendment seizure. In determining whether a detention is too lengthy to be considered an investigatory stop, the courts must examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Sharpe, 470 U.S. at 686, 105 S.Ct. at 1575. There is no bright line test for determining when an encounter between a citizen and a police officer exceeds the bounds of a Terry stop and becomes a seizure. State v. Miller, 00–1657 (La. 10/26/01), 798 So. 2d 947, 949 (per curiam).

In State v. Gant, 93–2895 (La. 5/20/94), 637 So. 2d 396 (per curiam), officers made an investigatory stop of the defendant's vehicle and "pursued a means of investigation likely to confirm or dispel their suspicions quickly by summoning to the scene a drug-certified dog" after receiving detailed information from an informant and conducting surveillance. Id. at 397. The dog arrived "within half an hour of the stop." Id. Once the dog alerted on the vehicle's trunk, the officers had probable cause to search the vehicle, and the warrant requirement was excused due to exigent circumstances arising from the stop of a vehicle on the open road. Id.

We find, as the Louisiana Supreme Court did in Gant, that the defendant's relatively short period of detention was reasonable to confirm or dispel police suspicions. Sergeant Wilson testified that he explained to the defendant that he was not under arrest and that he would be released if the narcotics dogs did not react. Importantly, Wilson did not read the defendant his Miranda rights, but did pat him down for officer safety and inform him that he was under investigation. A canine unit

was then called to the scene.  Sergeant Wilson testified that approximately fifteen minutes elapsed before the narcotics dog arrived at the scene and made a perimeter search of the vehicle.  The stop in the instant case was shorter than the stops in Gant and Miller, both of which were held to be reasonable. Given the totality of the circumstances, the defendant's continued detention and questioning without an arrest warrant did not constitute an unconstitutional seizure.  Once the dog made an indication in the area of the radio, officers had probable cause to fully search the vehicle.

Accordingly, the assignment of error has no merit.[27]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[28]

The state argues that this Court is barred from reviewing this Fourth Amendment claim by Stone v. Powell, 428 U.S. 465 (1976).  The state is correct.

In Stone, the United States Supreme Court held that where a state provides an opportunity for full and fair litigation of Fourth Amendment claims in the state courts, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence against him was obtained in an unconstitutional search and seizure.  Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002).  Interpreting Stone, the United States Fifth Circuit Court of Appeals has held:

An "opportunity for full and fair litigation" means just that: an opportunity.  If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978).  Therefore, the Stone bar applies even in those cases where no motion to suppress was ever filed.  Id. at 1192-93.  The Stone bar further applies even if the state court rulings on the Fourth Amendment claims were erroneous.  Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

---

[27] State v. Holmes, 10 So. 3d 274, 278-83 (La. App. 5th Cir. 2009); State Rec., Vol. 7 of 7.
[28] State v. Holmes, 24 So. 3d 857 (La. 2010) (mem.); State Rec., Vol. 2 of 7.

Stone clearly applies here.  As an initial matter, the Court notes that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." Bailey v. Cain, Civil Action No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007). Moreover, petitioner in fact availed himself of that opportunity.  The state court record shows that defense counsel filed a motion to suppress, his Fourth Amendment claims were fully litigated and denied after an evidentiary hearing, and the claim was asserted, considered, and again denied on direct review.  Because he was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state courts, Stone bars this Court from considering that claim.  Cardwell v. Taylor, 461 U.S. 571 (1983); Jones v. Johnson, 171 F.3d 270, 278 (5th Cir. 1999); Davis v. Cain, Civ. Action No. 07–6389, 2008 WL 5191912, at *18 (E.D. La. Dec. 11, 2008).

Accordingly, this claim should be denied.

### Ineffective Assistance of Counsel

Holmes next claims that his counsel was ineffective in failing to investigate and inspect the photographic evidence and prior testimony and in cross-examining Sergeant Wilson and the other police officers.  As discussed below, these claims have no merit.

Holmes raised these claims in his application for post-conviction relief.  The state district court found that petitioner had failed to prove the requisite elements of an ineffective assistance of counsel claim.[29]  In the last reasoned decision, the Fifth Circuit found that petitioner failed to show ineffective assistance of counsel under the Strickland standard.[30]  The Louisiana Supreme Court denied writs without stated reasons.[31]

---

[29] State Rec., Vol. 3 of 7, order dated July 14, 2014.
[30] State Rec., Vol. 7 of 7, 5th Cir. Opinion, 14-K-682, dated November 5, 2014.
[31] State ex rel. Holmes v. State, 178 So. 3d 988 (La. 2015) (mem.); State Rec., Vol. 7 of 7.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all the circumstances. See Strickland, 466 U.S. at 689; Carty v. Thaler, 583 F.3d 244, 258 (5th Cir. 2009). "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Harrington, 562 U.S. at 104 (citing Strickland, 466 U.S. at 689); Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, see also Williams v. Thaler, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." Day v. Quarterman, 566 F.3d 527, 536 (5th Cir. 2009) (quoting Strickland, 466 U.S. at 693). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Strickland, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. Harrington, 562 U.S. at 112.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett v. McCotter, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)).

Because petitioner's ineffective assistance of counsel claims were denied on the merits and present mixed questions of law and fact, this Court must defer to the state court decision rejecting those claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland

claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ----, ----, 129 S. Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington, 562 U.S. at 101 (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court and the defense attorney the benefit

of the doubt."  <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Petitioner specifically claims that counsel failed to inspect and investigate photographic evidence documenting the location where a Times-Picayune bill was found in the Metairie apartment. He further contends that counsel was not familiar with the testimony from the hearing related to the motion to suppress.  Petitioner failed to provide any evidence in support of these allegations.  He did not establish that counsel's investigation was in fact inadequate in any respect—on the contrary, he presented no evidence whatsoever as to what investigative steps counsel actually took or failed to take. Without such evidence, he cannot show that counsel performed deficiently.

Furthermore, the record demonstrates that defense counsel was present at the hearing relating to the motion to suppress, extensively cross-examined the state's witnesses, and presented the testimony of defense witnesses.[32]  Defense counsel had a copy of the hearing transcript and utilized it at trial during his cross-examination of Detective Angelica.[33]  It is also clear from the record that defense counsel was well aware that a Times-Picayune bill with petitioner's name and the Metairie address was found in the apartment and that police found documentation with that same address in petitioner's car.

Moreover, even if petitioner had made a showing that counsel performed deficiently, he would then additionally have to prove that prejudice in fact resulted from the purportedly inadequate investigation and discovery.  To make that showing, he must point to evidence in the record demonstrating that further investigation and discovery would have revealed additional information

---

[32] State Rec., Vol. 1 of 7, transcript of February 12, 2007; State Rec., Vol. 1 of 7, transcript of February 13, 2007.
[33] State Rec., Vol. 2 of 7, trial transcript of May 1, 2008, pp. 39-45.

beneficial to the defense.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Here, he has not shown that any such beneficial information would have been revealed by further investigation and discovery.

Petitioner's claim that counsel failed to adequately confront or cross-examine at trial Sergeant Wilson and the other police witnesses also fails.  As an initial matter, the Court notes that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 F. App'x 769 (5th Cir. 2005); see also Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 F. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 F. App'x 462 (5th Cir. 2009); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006).  Moreover, courts are not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, they are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689.  It is irrelevant that another attorney might have made other choices or handled such issues differently.  As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  Id.

In the instant case, petitioner simply has not meet his burden with respect to this claim.  Defense counsel in fact extensively and effectively cross-examined Sergeant Wilson as well as Detective Angelica and Deputy Monnerjahn.  Defense counsel specifically questioned Angelica whether a

Times-Picayune bill was found in the trash at the apartment.[34]  Detective Angelica testified that while a piece of mail was found at the apartment, he could not recall who the mail was from or the exact location in the apartment where it was found.[35]  Defense counsel then attempted to impeach Detective Angelica's credibility based on his prior testimony from the hearing regarding the motion to suppress.[36]

Defense counsel also questioned both Monnerjahn and Wilson about the Times- Picayune bill. Deputy Monnerjahn testified that the Times-Picayune bill addressed to petitioner was found on the counter during the search of the Metairie apartment.[37]  On cross-examination, Monnerjahn admitted that he did not find any other items addressed to petitioner during a search of the apartment.[38]  Sergeant Wilson testified on direct examination that "documentation" with the Metairie apartment address was found during the search of petitioner's vehicle.[39]  On cross-examination, Wilson specifically testified that the Times-Picayune bill was not found during a search of petitioner's vehicle but rather was found in the apartment.[40]  In response to defense counsel's questioning regarding the document found in petitioner's vehicle, Wilson explained that, "there was a – something, some sort of documentation which led us – which led Detective Perez to advise us that he had an address—I don't remember exactly what it was, sir."[41]  Wilson admitted that he did not know whether the documentation found in petitioner's car that led them to the Metairie apartment was a bill or a piece of paper and could not produce the document in court.[42]

---

[34] Id., at p. 33.
[35] Id.
[36] Id., at pp. 39-45.
[37] Id., at pp. 66-70.
[38] Id., at pp. 69-70.
[39] Id., at pp. 75-76.
[40] Id., at pp. 93-94, 103.
[41] Id., at p. 94.
[42] Id., at pp. 94, 103-05.

Petitioner has not identified any relevant questions that counsel failed to ask on cross-examination.  Moreover, the Court has reviewed the trial transcript in its entirety and finds that counsel's cross-examination of the state's witnesses was not deficient and that petitioner was not prejudiced by counsel's performance.

It is clear from the record that counsel attempted to discredit the state's witnesses through cross-examinations in an effort to raise doubt about the reliability of their testimony and in support of Holmes's claim of actual innocence.  The testimony was presented to the jury, who as the trier of fact, weighed and considered the testimony.  The fact that the jury did not believe the defense does not render counsel's performance constitutionally deficient.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (citations omitted).

Holmes has not established that the denial of relief by the state courts was contrary to, or an unreasonable application of Strickland.  Holmes is not entitled to relief on this claim.

## **Habitual Offender**

Holmes's final claim is that that the state presented insufficient evidence to support a finding of habitual offender status.  He argues that the evidence was insufficient to establish his identity as the person with two of the five prior convictions alleged in the habitual offender bill of information.  He also claims that the state failed to demonstrate that the prior convictions were lawfully obtained.

1.    __Prior Convictions Obtained in Violation of His Constitutional Rights__

The state argues that any claim by petitioner that his prior convictions were obtained in violation of his constitutional rights is unexhausted and, because it would now be procedurally defaulted in state court, it is also procedurally barred from federal review.  The state is again correct.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted).  The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.  Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution.  Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

"To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted).  That requirement applies to *all* levels of review in the state court system, meaning that a petitioner's federal claim must have been fairly presented to "each appropriate state court (including a state supreme court with powers of discretionary review)."  Baldwin, 541 U.S. at 29.

Here, it is beyond cavil that petitioner did not present a claim that the prior convictions were obtained in violation of his constitutional rights to the Fifth Circuit.  In his second direct appeal, petitioner asserted that the evidence presented by the state with regard to two of his prior convictions

was insufficient to prove that he was the person convicted of those offenses.[43]  The Fifth Circuit specifically noted that "defendant does not argue that any of the alleged predicate convictions were obtained in violation of his constitutional rights."[44]  Therefore, the claim is clearly unexhausted.

Further, as the state notes in its response, petitioner's failure to exhaust this claim in state court presents an additional problem and basis for dismissal, i.e. a procedural bar in federal court.  If, as is the case here,  "a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).  In the instant case, there is little doubt that the state courts would deny any new attempt by petitioner to assert the instant claim as procedurally barred because any new state post-conviction application would be both repetitive under La. Code Crim. P. 930.4[45] and untimely under La. Code Crim. P. art. 930.8.[46]

Accordingly, petitioner's unexhausted claim is procedurally barred from federal relief unless he demonstrates either that (1) both "cause" exists for his default and "prejudice" would result from the application of a procedural bar or (2) the Court's failure to address the claims would result in a "fundamental miscarriage of justice." See, e.g., Bagwell, 372 F.3d at 756-57.  Petitioner makes no attempt to establish "cause" for the procedural default of this claim, and, as such, the Court need not determine whether prejudice exists.  Martin, 98 F.3d at 849.

Because petitioner has not met the "cause and prejudice" test, this Court must determine whether petitioner has made a colorable showing of actual innocence such that application of the

---

[43] State Rec., Vol. 6 of 7, Appellate Brief dated May 14, 2012.

[44] State v. Holmes, 106 So. 3d 1076, 1080 (La. App. 5th Cir. 2012); State Rec., Vol. 6 of 7.

[45] La. Code Crim. P. art. 930.4(E) provides:  "A successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

[46] La. Code Crim. P. art. 930.8 generally requires that a petitioner file his post-conviction within two years of the date on which his conviction and sentence became final.  Although there are exceptions provided in the article, those exceptions to do not appear to be applicable to petitioner's claim.

procedural bar would result in a fundamental miscarriage of justice. However, the Court notes that it is unclear whether the exception even applies *at all* to cases, such as this one, in which the defaulted claim relates merely to an alleged sentencing error in a noncapital proceeding.

In Haley v. Cockrell, 306 F.3d 257 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, after noting that a split exists among the circuits on that issue, held that the "actual innocence" exception is available to petitioners in noncapital proceedings who claim they were erroneously sentenced. Id. at 265-66. The Haley court further held that, when barred claims dealt with such alleged sentencing errors, the "actual innocence" requirement is met only when the petitioner shows that "he would have not been legally eligible for the sentence he received." Id. at 264. However, the Supreme Court subsequently vacated the Haley decision on other grounds and remanded the case to the Fifth Circuit. Dretke v. Haley, 541 U.S. 386 (2004). In so doing, the Supreme Court expressly declined to answer the question of whether the "actual innocence" exception applies to noncapital sentencing errors. Id. at 393-94.

This Court does not attempt to answer the question left open by the Supreme Court. Nevertheless, even if the "actual innocence" exception is applicable to defaulted claims regarding noncapital sentencing errors, petitioner has failed to present any evidence whatsoever establishing that he was *legally ineligible* for the sentence imposed, i.e. a term of life imprisonment without benefit of probation or suspension of sentence as a fourth offender.[47] Thus, he has not demonstrated that a

---

[47] Petitioner pled guilty to three of the five prior offenses. At no point during the habitual offender hearing did the defense object to the voluntariness or intelligence of the guilty pleas. State Rec., Vol. 6 of 7, transcript of April 17, 2009. The state only has the burden to prove the constitutionality of the pleas (when not on direct review of those pleas) when the defendant has produced some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. State v. Shelton, 621 So. 2d 769, 779 (La. 1993). Only when the defendant provides affirmative evidence that there was some infringement of his rights is the burden on the state to prove the validity of the plea and that the defendant was represented by counsel. Id. at 779. Petitioner has not produced such affirmative evidence, and thus there is no reason to believe such evidence exists. Further, the state district court specifically indicated that petitioner was represented by counsel in the cases from Orleans and Jefferson Davis. State Rec., Vol. 6 of 7, transcript of April 17, 2009, p. 28.

fundamental miscarriage of justice -- because he is actually innocent -- will result from application of the procedural bar.

Accordingly, for all of the foregoing reasons, the undersigned finds that petitioner's claim that his prior convictions were obtained in violation of his constitutional rights is procedurally barred from federal review.

### 2.    <u>Sufficient Evidence of Identity</u>

In the second direct appeal, the Louisiana Fifth Circuit Court of Appeal denied petitioner's insufficient evidence claim holding:

> The trial court found that the state met its burden of establishing that defendant charged as a multiple offender was the same person who was convicted of at least four of the alleged convictions. The issue in this appeal is whether that finding of fact was clearly wrong.
>
> To prove that defendant is a habitual offender, the state must establish, by competent evidence, that defendant is the same person who was convicted of the predicate felonies. <u>State v. Perkins</u>, 99–1084 (La. App. 5th Cir. 1/25/00), 751 So. 2d 403, 406, <u>writ denied</u>, 00–0656 (La. 12/15/00), 777 So. 2d 476, citing <u>State v. Chaney</u>, 423 So. 2d 1092 (La.1982); <u>State v. Bailey</u>, 97–302 (La. App. 5 Cir. 4/28/98), 713 So. 2d 588, <u>writ denied</u>, 98–1458 (La. 10/30/98), 723 So. 2d 971. Because it is a question of fact, the state must prove that defendant is the same person who committed the predicate crimes it alleged beyond a reasonable doubt. La. R.S. 15:529.1. The trial court's determination of this question of fact will only be reversed by this Court if it is clearly wrong.
>
> The state may meet this burden by various means, such as (1) the testimony of witnesses to prior crimes, (2) photographs contained in a duly authenticated record, (3) expert testimony matching fingerprints of the accused with those in the record of prior proceedings, or (4) evidence of identical driver's license number, sex, race and date of birth. <u>State v. Dudley</u>, 06–1087 (La. App. 1 Cir. 9/19/07), 984 So. 2d 11, <u>writ not considered</u>, 08–1285 (La.2009), 25 So. 3d 783; <u>State v. Perkins</u>, <u>supra</u>, citing <u>State v. Brown</u>, 514 So. 2d 99 (La.1987), <u>cert. denied</u>, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), <u>reh'g denied</u>, 487 U.S. 1228, 108 S.Ct. 2888, 101 L.Ed.2d 923 (1988); <u>State v. Bailey</u>, <u>supra</u>.
>
> This Court has held that testimony comparing a defendant's fingerprints with fingerprints found on prior arrest records is sufficient to prove that defendant was the person convicted of a prior felony. <u>State v. Bell</u>, 97–1134 (La. App. 5 Cir. 2/25/98), 709 So. 2d 921, <u>writ denied</u>, 98–792 (La.9/16/98), 721 So. 2d 477.
>
> While matching fingerprints may be the most common way to prove that the current defendant is the same defendant who committed the predicate crimes, courts have made valid multiple offender findings without such evidence. The Habitual

Offender Act, La. R.S. 15:529.1, does not require the state to use a specific type of evidence to carry its burden; prior convictions may be proved by any competent evidence. State v. Dudley, supra, citing State v. Payton, 00–2899 (La.3/15/02), 810 So. 2d 1127.

For example, in State v. Bailey, this Court held that the defendant was sufficiently linked to a predicate crime, when the trial court received supporting testimony of the prosecutor of that predicate crime, who stated that the defendant currently before the court was the person convicted of the predicate crime. 713 So. 2d 588, 611 (1998).[1]

[1] Also, in State v. Dudley, supra, the First Circuit upheld the multiple offender conviction where there was a match between the fingerprints of the defendant currently charged as a multiple offender and fingerprints taken by the Department of Corrections "in connection with" the predicate conviction. This fingerprint evidence was sufficient for the First Circuit to uphold the conviction despite the fact that fingerprints were not on the bill of information for the predicate crime. Id. at 28.

Here, defendant does not contest three of the convictions alleged in the multiple offender bill filed against him. Those convictions are: the first alleged conviction, numbered 06–1094; the second alleged conviction, numbered 414–743; and the fifth alleged conviction, numbered 370–671. Also, defendant does not argue that any of the alleged predicate convictions were obtained in violation of his constitutional rights. Defendant argues only that there was an insufficient link between his identity and the identity of the person, or persons, convicted in Jefferson Davis Parish case number CR–7654–94 and Orleans Parish case number 373–150. For reasons that follow, we find that the trial court did not commit a reversible error when it found that defendant was the same person convicted of each of these prior crimes.

*The First Challenged Conviction—Case Number CR–7654–94*

First, defendant argues that there was an insufficient link between him and the person convicted in case number CR–7654–94. The evidence, however, does not support his claim. On April 15, 2009, at defendant's multiple offender hearing, the state put on evidence to prove that defendant was the person convicted in case number CR–7654–94. This evidence included an arrest booking card, a certified conviction packet, and the testimony of an expert fingerprint examiner.

In its first step of linking defendant to the conviction from CR–7654–94, the state had its expert fingerprint defendant before trial; this print was admitted as State's Exhibit 1. The state then entered into evidence the arrest booking card created in connection with CR–7654–94; this was admitted as State's Exhibit 2. This booking card showed, among other relevant information, prints of all ten fingers of the arrested person. The state's fingerprint expert compared the prints on State's Exhibit 1 with prints on the arrest booking card, State's Exhibit 2. This expert testified that in her opinion, the fingerprints on the two exhibits matched. Based on this expert's testimony, the trial court found that defendant sitting before it that day was the same person who was fingerprinted on State's Exhibit 2.

The state's next step was to link State's Exhibit 2 with a certified conviction packet from case number CR–7654–94. This packet contained certified copies of the bill of information, the plea of guilty, the waiver of rights form, and the Boykinization

and sentencing minutes of the court; it was admitted as State's Exhibit 6. The trial court observed that both State's Exhibit 2 and State's Exhibit 6 stated defendant's name, date of birth, sex, and social security number. The trial court observed further that the attorney representing the person described in State's Exhibit 6 was the same attorney who represented defendant in another criminal case. Based on this evidence, the trial court found that defendant who was convicted in State's Exhibit 6 was the same person before the court that day.

In analyzing the link between State's Exhibit 2 and State's Exhibit 6, this Court notes that while the link was not perfect, it was also not inconsistent. While neither exhibit lists a driver's license number, both exhibits list the same social security number. On the question of defendant's race, State's Exhibit 2 indicates that the arrested person was black; State's Exhibit 6 is silent on the matter. Finally, State's Exhibit 6 states that the "offense occurred on 3–16–94" while State's Exhibit 2 states the arrest date as "3–17–94." Because an offense usually happens before an arrest, this difference between the two exhibits is not an inconsistency.

Taking the evidence as a whole, we cannot say that the trial court was clearly wrong when it linked defendant to this predicate conviction through State's Exhibits 1, 2, and 6. Therefore, we affirm the trial court's finding that defendant was the same person convicted in case number CR–7654–94.

*The Second Challenged Conviction—Case Number 373–150*

Second, defendant argues that there was an insufficient link between him and the person convicted in case number 373–150. We have ruled that there was sufficient evidence to link defendant to the conviction from case number CR–7654–94. Further, defendant did not contest his conviction from case numbers: 06–1094, 414–743, and 370–671. Because four convictions of defendant have been validly found, in this case, the requirements of the Habitual Offender Act have been met. Therefore, defendant's second argument is moot and we hereby affirm the finding of the trial court that defendant, Undra Holmes, is a four time habitual offender under La. R.S. 15:529.1.[48]

The sufficiency of the state's evidence on habeas review is governed by the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements to have been proven beyond a reasonable doubt. Jackson is the appropriate standard to evaluate sufficiency of evidence in an habitual offender proceeding. Burton v. Cain, Civ. Action No. 15-371, 2016 WL 2637936, at *9 (E.D. La. Apr. 6, 2016), adopted, 2016 WL 2594840 (E.D. La. May

---

[48] State v. Holmes, 106 So. 3d 1076, 1079-81 (La. App. 5th Cir. 2012); State Rec., Vol. 6 of 7,

5, 2016); see King v. Cain, Civ. Action No. 10–1197, 2011 WL 3320714, at *8 (E.D. La. June 30, 2011), adopted, 2011 WL 3320631 (E.D. La. Aug. 1, 2011); George v. Cain, Civ. Action No. 08–5022, 2011 WL 1832823, at *5 (E.D. La. May 13, 2011); Caddell v. Quarterman, No. Civ. A. H-06-0652, 2007 WL 655759, at *6 (S.D. Tex. 2007); see also Warfield v. Warden, Louisiana State Penitentiary, Civ. Action No. 09-cv-0361, 2012 WL 3067604, at *2 (W.D. La. July 10, 2012), adopted, 2012 WL 3067602 (W.D. La. July 27, 2012).

Holmes was adjudicated and sentenced as a *fourth* felony offender based on five prior felony cases recognized by the trial court.  Petitioner argues that the state failed to meet its burden of proof to establish that he was the same person convicted of the predicate offenses of possession with intent to distribute cocaine in case number CR-7654-94 from Jefferson Davis Parish and possession of cocaine in case number 373-150 from Orleans Parish.  He specifically claims there was insufficient nexus between the arrest booking card and the certified conviction packet relating to the Jefferson Davis conviction.  Petitioner further claims that there were no fingerprints linking him to the conviction in case number 373-150.  For the following reasons, the Court finds that petitioner's insufficient evidence claim is without merit.

To establish that a defendant is a habitual felony offender under La. Rev. Stat. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony.  State v. Shelton, 621 So. 2d 769 (La. 1993); State v. Staggers, 860 So. 2d 174, 180 (La. App. 5th Cir. 2003) (citing State v. Davis, 829 So. 2d 554 (La. App. 5th Cir. 2002)); State v. Warfield, 859 So. 2d 307, 308-09 (La. App. 2d Cir. 2003).  Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction. Staggers, 860 So. 2d at 180.  However, independent proof, such as matching fingerprints and other

vital information, is required to show that the defendant is the same person identified in those records. State v. Walker, 795 So. 2d 459, 463 (La App. 5th Cir.2001), writ denied, 826 So. 2d 1115 (La. 2002).

The Louisiana Supreme Court has held that, in attempting to establish that the defendant is the same person convicted of a prior felony, the state may present: "(1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical drivers license number, sex, race and date of birth."  State v. Payton, 810 So. 2d 1127, 1130 (La. 2002) (citations omitted).  Identity can be proven by establishing that the defendant's fingerprints match those on an arrest register and then linking that arrest register to conviction records by matching identifying information.  State v. Williams, 788 So. 2d 515 (La. App. 4th Cir. 2001) ("It is sufficient to match fingerprints on an arrest register to a defendant, and then match the arrest register to a bill of information and other documents evidencing conviction and sentence; this can done through a date of birth, social security number, bureau of identification number, case number, specifics and details of the offense charged, etc.").

At the habitual offender hearing in the instant case Latent Fingerprint Examiner Aischa Prudhomme was accepted by the court as an expert in the field of fingerprint examination and identification.  In connection with Prudhomme's testimony, the prosecution introduced Exhibit 1, a card with the known fingerprints of petitioner.  Prudhomme then testified that the fingerprints on Exhibit 1 matched the fingerprints on Exhibits 2, an arrest booking card from Jefferson Davis Parish that also included a booking photograph of petitioner.[49]  The state also introduced Exhibit 6, the certified conviction packet from case number CR-7654-94.[50]

---

[49] State Rec., Vol. 6 of 7, transcript of April 17, 2009, pp. 6-7.
[50] Id., at p. 16.

The arrest booking card did not include a case number and indicated that the date of the arrest was March 17, 1994 while the certified conviction packet indicated an offense date of March 16, 1994. However, both exhibits included petitioner's name, date of birth, and sex. Additionally, both exhibits listed the same social security number. Furthermore, Exhibit 2 included a photograph of petitioner. Finally, the same attorney represented petitioner in both cases.[51] The foregoing evidence, considered in the light most favorable to the prosecution, was sufficient for the state trial court to conclude that Holmes was the person convicted in case number CR-7654-94.

Petitioner did not contest three of his other prior convictions. Because he has four valid convictions, the enhancement of his sentence under the habitual offender bill was appropriate and the Court need not address his argument relating to the fifth conviction (case number 373-150).

In summary, it is clear that the evidence, considered in the light most favorable to the prosecution, was sufficient to support petitioner's habitual offender adjudication. Because petitioner has not established that the state court's decision denying this claim was contrary to, or involved an unreasonable application of, clearly established federal law, the AEDPA requires that this federal court defer to that decision and deny petitioner's claim.

## **<u>RECOMMENDATION</u>**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Undra Holmes be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

---

[51] <u>Id.</u>, at p. 28.

33

provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 10th day of January, 2018.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**